Filed 1/27/25  Barriga v. Ducommun Incorporated CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALMA BARRIGA, | D083706 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVSB2028738) |
| DUCOMMUN INCORPORATED et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Bernardino County, David Cohn and Jessica Morgan, Judges.  Appeal treated as a petition for writ of mandate, relief denied.  Motion to dismiss appeal denied.

Jackson Lewis, Adam Y. Siegel, Frant M. Liberatore and Dylan B. Carp for Defendants and Appellants.

Stiller Law Firm, Ari J. Stiller; Haines Law Group, Paul K. Haines, Sean M. Blakely and Alexandra R. McIntosh for Plaintiff and Respondent.

## INTRODUCTION

This is an appeal of a postjudgment order enforcing a settlement agreement.  The underlying lawsuit is a wage and hour class and

representative action seeking damages for a putative class of non-exempt employees who worked shifts that entitled them to overtime as well as meal and rest breaks.  After conducting informal discovery and attending an early mediation, the parties entered a settlement agreement.  The trial court preliminarily approved the settlement, provisionally certified the settlement class defined in the settlement agreement, confirmed Alma Barriga (the named plaintiff) as the settlement class representative, and directed the settlement administrator to serve notice to settlement class members.  Under the settlement agreement, Ducommun Incorporated and Ducommun Aerostructures, Inc. (defendants and sometimes Ducommun) were required to provide information about the settlement class members to the settlement administrator.  After the settlement administrator received information from defendants, notices were served, no objections or opt-outs were received in response, and the trial court granted final approval of the settlement and entered judgment.

In the months that followed, class counsel discovered that the settlement class list the defendants had provided to the settlement administrator was incomplete:  it excluded employees who fell within the settlement class defined in the parties' settlement agreement.  Barriga moved to enforce the settlement agreement and asked the trial court to direct defendants to produce a complete list of the entire settlement class.  The court entered a minute order granting the motion.

Defendants contend the trial court erred by (1) excluding parol evidence they assert reveals a latent ambiguity in the settlement agreement's definition of "Settlement Class"; and (2) granting Barriga's enforcement motion without requiring her to reestablish that the settlement was fair, adequate, and reasonable to the excluded settlement class members or that

she was an adequate representative of them. Barriga responds that the trial court's minute order is not an appealable final order, although she concedes it is appropriate to treat this appeal as a petition for writ of mandate. She also opposes defendants' claims of error on the merits. We construe defendants' appeal as a petition for writ of mandate and conclude the minute order was not entered in error. Accordingly, we deny relief.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### *The Complaint*

Defendants manufacture and supply electronic and structural systems to the aerospace and defense industries. They have four facilities in California.

Barriga had been employed by defendants as a non-exempt employee in the position of "Senior Scriber" from August 2007 until June 2020. In her operative complaint, she alleged that defendants had underpaid overtime wages and failed to provide meal and rest periods owed to her and other non-exempt employees, failed to provide accurate wage statements or timely pay all final wages, and were liable for civil penalties under the Private Attorneys General Act (PAGA). In December 2020, she filed a complaint asserting causes of action for (1) failure to pay all overtime wages (Lab. Code,[1] §§ 204, 510, 1194, 1198); (2) meal period violations (*id.*, §§ 226.7, 512); (3) rest period violations (*id.,* §§ 226.7, 516); (4) wage statement violations (*id.,* § 226 et seq.); (5) waiting time penalties (*id.,* §§ 201–203); (6) unfair competition (Bus. & Prof. Code, § 17200, et seq.); and (7) civil penalties under PAGA (Lab. Code, § 2698, et seq.). Barriga brought the action on behalf of herself and "all

---

[1]     Further unspecified statutory references are to the Labor Code.

3

others similarly situated."  She described the persons on whose behalf she was bringing these claims as "all of [d]efendants' current and former non-exempt employees in California" whose work histories involved the alleged violations.[2]

II.

*Class Action Settlement and Preliminary Approval of the Settlement*

The parties attended a private mediation in October 2021.  In preparation for the mediation, Barriga's counsel sent defense counsel

---

[2]     Specifically, Barriga alleged she was suing on behalf of herself and the following subclasses:  (a) an "Overtime Class" consisting of "all of [d]efendants' current and former non-exempt employees in California who worked more than 8.0 hours per day and/or 40.0 hours per week and (i) received Incentive Pay during a corresponding time period, during the four years plus 178 days immediately preceding the filing of this action through the present"; (b) a "Meal Period Class" consisting of "all of [d]efendants' current and former non-exempt employees in California who:  (i) worked at least one shift in excess of 5.0 hours and/or (ii) worked at least one shift in excess of 10.0 hours, during the four years plus 178 days immediately preceding the filing of this action through the present"; (c) a "Rest Period Class" consisting of "all of [d]efendants' current and former nonexempt employees in California who worked at least one shift in excess of 3.5 hours, during the four years plus 178 days immediately preceding the filing of this action through the present"; (d) a "Wage Statement Class" consisting of "all members of the Overtime Class, Meal Period Class, and/or Rest Period Class who have received a wage statement from [d]efendants during the one year plus 178 days immediately preceding the filing of this action through the present"; and (e) a "Waiting Time Class" consisting of "all formerly employed members of the Overtime Class, Meal Period Class and/or Rest Period Class, who separated their employment from [d]efendants during the three years and 178 days immediately preceding the filing of this action through the present."  The periods of employment for each subclass included the relevant statute of limitations plus 178 days to reflect that the statutes of limitations had been suspended for 178 days, from April 6 to October 1, 2020, pursuant to California Judicial Council Emergency Rule 9.

4

informal discovery requests seeking the following information: "[a] class list for all non-exempt employees in California who worked at any time from June 21, 2016 through the present"; daily timekeeping and payroll records for "all non-exempt employees in California who worked at any time from June 21, 2016 through the present"; all policies, memos, and/or communications "applicable to all non-exempt employees in California who worked for Ducommun at any time from June 21, 2016 through the present"; "[a]ny Employee Handbooks in effect during the relevant time period of June 21, 2016 to present"; and information about any changes to defendants' employee wage statements since June 21, 2019.

The class list that defendants produced in response to Barriga's discovery requests identified 187 non-exempt employees who worked at three California facilities. One of Barriga's attorneys noticed that the list only encompassed three facilities and sent defense counsel an email on July 1, 2021 stating: "My recollection from the call last week was that there were four locations. I only see three locations on the spreadsheet. Can you please clarify the number of locations?" Eve Tilly-Coulson of Jackson Lewis P.C., the law firm representing defendants, responded: "My understanding is that there are three locations. *If I said four last week I misspoke.* My apologies." (Italics added.)

The parties accepted a mediator's proposal, agreed to a classwide settlement, and negotiated a final "Stipulation of Settlement" (settlement agreement). Relevant here, the settlement agreement contained an integration clause and provided that it had been reached "by and between" Barriga "individually and on behalf of all members of the Settlement Class (defined below)[.]"

"Settlement Class," in turn, was defined as follows: "**Settlement Class**. For purposes of this Settlement Agreement only, Plaintiff and Defendants stipulate to the certification of the following Settlement Class: [¶] All current and former non-exempt employees who worked for Defendant Ducommun Aerostructures, Inc. in California at any time from December 16, 2016 through August 29, 2021 ('Class Period') and who did not sign an individual settlement and release. [¶] Defendants represent there are approximately 130 Settlement Class members."

The settlement agreement further provided that "Settlement Class members (except those who opt-out) shall release all claims alleged in the [operative] Complaint[.]" In exchange, defendants agreed to pay a gross settlement amount of $935,260. The gross settlement amount was subject to increase, however, under the terms of the following "**Escalator Clause**": "Defendants represent that Settlement Class members collectively worked an estimated 23,348 total workweeks during the Class Period. The Parties agree that this is a material term of the Settlement. If the actual number of workweeks worked by Settlement Class members during the Class Period is more than 5% greater than 23,348 (i.e., if there are 24,516 or more total workweeks), then the Gross Settlement Amount shall increase proportionately with the increase in workweeks (e.g., if the number of total workweeks is 7% higher than 23,348, the Gross Settlement Amount will increase by 7%)."

Barriga moved for preliminary approval of the settlement. In response, defendants submitted a non-opposition stating they had agreed to settle "upon the terms in the . . . Settlement Agreement," and the settlement was "fair and reasonable" and "in the best interest of all Parties and the settlement class." The trial court granted the motion, preliminarily approved

6

the settlement, designated Barriga as the class representative and her counsel as class counsel, and conditionally certified the following settlement class: "All current and former non-exempt employees who worked for Defendant Ducommun Aerostructures, Inc. in California at any time from December 16, 2016 through August 29, 2021 ('Class Period') and who did not sign an individual settlement and release."

The trial court also approved the parties' proposed class notice and directed the settlement administrator to mail the notice packet to settlement class members "in accordance with the terms of the Settlement." Under the settlement agreement, defendants were required to provide the settlement administrator with the names, last known addresses, and workweek data "for each Settlement Class member."

### III.

*Final Settlement Approval and Entry of Judgment*

Class notices were then mailed to 128 people whose information was contained in a data file that defense counsel provided to the settlement administrator. The notices garnered no notices of objection and no opt-outs. On December 19, 2022, the trial court granted final approval of the parties' settlement and entered judgment "in conformity with the Settlement Agreement[.]" In the judgment, the court stated, "[t]his document shall constitute a final judgment pursuant to California Rule of Court 3.769(h) . . . . The [c]ourt will retain jurisdiction to enforce the Settlement, the Final Approval Order, and this Judgment." (See Cal. Rules of Court, rule 3.769(h) ["If the court approves the settlement agreement after the final approval hearing, the court must make and enter judgment. The judgment must include a provision for the retention of the court's jurisdiction over the parties to enforce the terms of the judgment."].)

7

## IV.

### *Barriga's Motion to Enforce the Settlement Agreement,*
### *Final Approval Order and Judgment*

A.     *Barriga's Motion*

Five months later, on May 18, 2023, Barriga filed a motion to (1) enforce defendants' compliance with the settlement agreement, final approval order and judgment pursuant to Code of Civil Procedure section 664.6, (2) compel defendants to produce a complete class list, and (3) set a date for her anticipated motion for attorney fees and costs incurred in enforcing the settlement agreement.

Barriga asserted that after the trial court granted final approval, settlement payments were sent to settlement class members.  In the weeks that followed, class counsel was contacted by approximately one dozen employees of defendants who claimed to "fit the clear definition of a Settlement Class member but were left off of the Class List" and thus did not receive notice of the settlement or a settlement payment.  Barriga stated defendants and their counsel had refused to provide "any coherent explanation" why employees "who meet the clear and unambiguous Settlement Class definition were excluded from the Settlement."

B.     *Defendants' Opposition*

Defendants opposed the motion, and in doing so they strived to show that although the settlement class was defined in the settlement agreement to mean "[a]ll" of their non-exempt employees, they had understood it to consist of only a subset of their non-exempt employees.

According to defendants, they divided their employees into three general categories:  direct labor roles (which involved "physical, hands-on manual labor, having a direct impact on the production of [defendants']

8

products"); indirect labor roles (which "do not involve hands-on manual labor, and include professionals in safety and maintenance, supply chain management, and engineering"); and selling, general and administrative ("SGA") roles (roles that "do not involve physical, hands-on manual labor, and include the myriad of individuals in departments necessary to run *most any business*").  (Defendants did not present evidence they had informed Barriga's counsel of the existence of these three employment categories.)  Defendants considered scribers like Barriga to be direct labor employees.

Defendants also revealed they had a total of four California facilities (El Mirage, Gardena, Orange, and Monrovia).  Their Monrovia facility was unionized and was governed by a collective bargaining agreement.  (They did not present evidence they had previously disclosed these facts to Barriga's counsel.)  Defendants' human resources manager averred that direct labor employees had "*completely different work experiences*" from indirect labor employees, SGA employees, and union employees, although the only difference she identified was that direct labor employees performed "physical, hands-on manual labor" in order to "*make* [defendants'] products" and indirect labor and SGA employees did not.

The cornerstone of defendants' opposition was a declaration from Joel P. Kelly, a former Jackson Lewis attorney.  Kelly averred:  "In light of the fact that [Barriga] worked exclusively as a Scriber, performing physical, hands-on manual labor, having a direct impact on the production of Ducommun's products, and in light of the differences in experiences between such employees and employees who were not performing physical, hands-on manual labor, having a direct impact on the production of Ducommun's products, *I reasonably understood* that Plaintiff sought to represent *only* all hourly, non-exempt and non-union employees of Ducommun who worked in

9

roles involving physical, hands-on manual labor, having a direct impact on the production of Ducommun's products, *and proceeded accordingly*." (Italics added.) Kelly did not state that he disclosed his interpretation of the class to Barriga's counsel.

By "proceeded accordingly," Kelly appeared to mean that, during the course of the litigation, Jackson Lewis attorneys had produced information about defendants' direct labor employees and had not produced information about their indirect labor, SGA, and union employees. Specifically, Kelly stated that in response to Barriga's counsel's premediation request for a list of all non-exempt employees, "[c]*onsistent with Jackson Lewis' understanding* [*sic*] *of the scope of the class*, Jackson Lewis prepared an Excel spreadsheet ('the Class List') identifying what it believed to be all hourly, non-exempt employees of [d]efendants *who worked in roles involving physical, hands-on manual labor*, having a direct impact on the production of Ducommun's products, during the class period[.]" (Italics added.) Kelly did not state that he or anyone else at Jackson Lewis ever informed Barriga's counsel the class list had been limited in this manner, or that Barriga's counsel had agreed to any such limitation.

Kelly also adverted to the defense mediation brief (a copy of which was attached to his declaration), which he claimed reflected the defense's "understanding of the scope of the class." However, the mediation brief did not disclose that the information it contained was based on this limited understanding. For example, it broadly asserted that "[t]he alleged putative class *includes 187 current and former Ducommun non-exempt employees* who worked at any of the three facilities at Orange, Gardena or El Mirage at any time from June 21, 2016 to the present. [Defendants] estimate that there are 27,658 workweeks in the class period." (Italics added.) The brief did not

reveal that these numbers reflected defendants' non-exempt *direct labor* employees and failed to account for their non-exempt *indirect labor*, *SGA*, or *union* employees. (Indeed the terms "direct labor," "indirect labor," "SGA," and "union" did not appear in the mediation brief at all.) The mediation brief also failed to disclose that defendants had a fourth facility in Monrovia.

Kelly also pointed to the mediator's proposal, which described the parties as having "negotiated over a period covering 27,658 ([d]efendants' calculations), but after mediation [defendants] produced releases covering 8,400 of those workweeks, reducing the workweeks in this matter to 19,258" which was the "approximate number of workweeks that would be covered by this settlement." Defendants argued this proposal showed "the number of workweeks at issue for purposes of settlement."

Defendants' remaining extrinsic evidence consisted of the class list Jackson Lewis prepared for mediation and the email transmitting it to Barriga's counsel. However, the class list only provided the location (El Mirage, Gardena, or Orange), hire date, and termination date for the putative class members, who were identified by a letter code and number (JLID 1 through JLID 187)[3], not by name. Significantly, the list did not identify the employment category (i.e., direct labor) of the listed employees, nor did the list or the email by which it was transmitted otherwise disclose that it was only a partial list representing defendants' non-exempt direct labor employees. And Tilly-Coulson's July 1, 2021 follow-up email—in which she told Barriga's counsel that defendants had just "three locations" and "[i]f I said four last week I misspoke"—was *not* included in the email chain defendants submitted to the trial court.

---

[3]     JLID presumably stands for Jackson Lewis identification number.

Based on this evidence, defendants opposed Barriga's motion. They did not seek rescission of the settlement agreement or argue there had been no meeting of the minds. To the contrary, they argued: "The [p]arties *have* a deal enforceable by this [c]ourt—it's just not the one that [p]laintiff and her counsel unreasonably *argue* has been struck." Although the settlement agreement defined the settlement class to mean "[a]ll current and former non-exempt employees," defendants called this definition a "mistake." They claimed the parties had jointly understood the settlement class to consist of approximately 130 individuals who worked approximately 23,348 workweeks. Defendants did not claim Barriga's counsel knew the estimates were limited to direct labor employees. Instead, they argued the limitation "*should have been obvious*" because their mediation brief said the class consisted of just 43 positions, and those positions excluded roles "that most *any* company . . . requires to function." (Defendants did not explain how Barriga or her counsel were supposed to know the employees in the omitted, assertedly critical positions were non-exempt.)

Defendants urged the trial court to deny the motion because there was nothing to enforce, as the settlement class was limited to the non-exempt direct labor employees who had already received settlement payments. They also argued that broadening the settlement to encompass the newly identified employees would result in a breach of the fiduciary duties owed by class counsel and the trial court, because class counsel had neither obtained nor offered information upon which the court could approve the settlement as fair, adequate and reasonable for the newly identified employees.

C. *Barriga's Reply*

In reply, Barriga urged the trial court to reject defendants' opposition arguments on two grounds. First, she argued that the settlement

12

agreement's definition of the settlement class was unambiguous and defendants were attempting to use parol evidence to vary its terms.

Second, to the extent the trial court considered parol evidence, Barriga argued it favored her interpretation of the settlement class rather than that of defendants. She protested that her attorneys had requested mediation data for " 'all non-exempt employees,' " and there was never "so much as a discussion about limiting the data in any way, nor did [defendants] ever inform [Barriga] that they were limiting the data being produced for mediation." Barriga also gave the trial court the full July 1, 2021 email chain in which Tilly-Coulson had told her attorneys "there are three locations" and "[i]f I said four . . . I misspoke." Barriga asserted Tilly-Coulson's email "appears to have been purposefully deleted" from the email chain submitted by the defense.

V.

*The Trial Court's Ruling Granting Barriga's Motion to Enforce*

The trial court issued a tentative ruling granting Barriga's motion. The court rejected defendants' claim that the settlement class was limited to the approximately 130 individuals whose pay records indicated an estimated 23,348 workweeks. It reasoned the settlement agreement "notes that these numbers are an *estimate,* and the agreement contains an[ ] escalator clause if the number of work-weeks exceeds the estimate by more than five percent."

The trial court also disagreed with defendants' assertion that the settlement class included only direct labor employees and not indirect laborers, SGA employees, or union employees. It observed the settlement agreement and pleadings did not restrict the class to those in certain job classifications or whose work had certain characteristics. It found the settlement class definition "provides *unambiguously* that the class comprises

13

*all* current and former non-exempt employees who worked at any time during the class period, excepting *only* those who signed individual releases." It declined to consider defendants' parol evidence, reasoning it was inadmissible because the class definition was not ambiguous.

Turning to the question of remedy, the trial court stated it was undisputed individuals who fell within the class definition were not given notice of the settlement, and due process required these individuals to be given notice and an opportunity to be heard. It outlined procedures that would be followed going forward, including recalculation of settlement shares and invocation of the escalator clause, if warranted by the increase in class size.

At the motion hearing, defendants argued for the first time that the term "non-exempt" was ambiguous as to whether it included union employees who were assertedly exempt from overtime laws. They also argued that "[c]hanging" the settlement class to include additional employees would be improper because "nothing is known" about them. The trial court continued the hearing pending supplemental briefing on these two issues.

After receiving supplemental briefing and holding a second hearing on September 28, 2023, the trial court entered a minute order confirming the four-page tentative ruling, which the court attached to its order.[4] In the minute order, the court also ordered defendants to produce an updated, complete list of the settlement class members along with the new total workweeks for the class, directed the settlement administrator to provide the settlement notice to the additional class members, ordered counsel to meet

---

[4] Judge David Cohn presided over the first hearing and issued the tentative ruling. Judge Jessica Morgan presided over the second hearing and issued the minute order confirming the tentative ruling.

14

and confer regarding class notice, and scheduled a status hearing on the verbiage of the class notice.

Barriga served a notice of entry of the minute order on October 4, 2023. Defendants filed a notice of appeal from the minute order on November 1, 2023.

DISCUSSION

I.

*We Exercise Our Discretion to Treat Defendants' Appeal as a Petition for Writ of Mandate*

Defendants assert the minute order is an appealable order after judgment under Code of Civil Procedure section 904.1, subdivision (a)(2)[5] and *Bates v. Rubio's Restaurants, Inc.* (2009) 179 Cal.App.4th 1125, 1130–1132 (*Bates*). Barriga, on the other hand, has filed a motion to dismiss in which she contends *Bates* was wrongly decided, and the minute order is not appealable because it is preliminary to further proceedings. In her motion, she also opposed construing the appeal as a writ, although as we will discuss she has since withdrawn that position. For reasons that follow, we exercise our discretion to treat defendants' appeal as a petition for writ of mandate.

The parties' dispute over the appealability of the minute order arises from principles articulated in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644 (*Lakin*). Although Code of Civil Procedure section 904.1, subdivision (a)(2), permits an appeal to be taken from an order made after an

---

[5] Code of Civil Procedure section 904.1, subdivision (a), states in relevant part: "An appeal, other than in a limited civil case, . . . may be taken from any of the following: [¶] (1) From a judgment [with certain exceptions] . . . . [¶] (2) From an order made after a judgment made appealable by paragraph (1)."

appealable judgment, *Lakin* explained that "not every postjudgment order that follows a final appealable judgment is appealable." (*Lakin*, at p. 651.) To be appealable, a postjudgment order must satisfy two requirements: (1) it must involve issues different from those addressed in the underlying judgment; and (2) it must "affect" or "relate to" the underlying judgment by enforcing it or staying its execution. (*Id.* at pp. 651–652.)

The question presented in *Lakin* was whether a postjudgment order denying attorney fees under Code of Civil Procedure former section 2033, subdivision (o),[6] was appealable. The Court of Appeal held that it was not, reasoning it failed to satisfy the second appealability requirement because it neither added to nor subtracted from the judgment. (*Lakin*, *supra*, 6 Cal.4th at p. 652.) The California Supreme Court found this reasoning "incomplete." (*Ibid.*) Surveying cases in which it had held that a variety of postjudgment orders did not affect the judgment or relate to its enforcement, our high court observed that "[a]ll are orders that, although following an earlier judgment, are more accurately understood as being preliminary to a later judgment, at which time they will become ripe for appeal." (*Id.* at pp. 652–654.) For example, the orders it had held not appealable included a posttrial order excusing a plaintiff's failure to satisfy a condition for bringing a new trial motion (*id.* at p. 652) and orders pertaining to the preparation of a record for use in a future appeal (*id.* at pp. 652–653). The *Lakin* court observed: "All these 'postjudgment' orders lacked finality in that they were . . . preparatory to later proceedings. To hold these orders 'nonappealable' merely postponed

---

6      Code of Civil Procedure former section 2033, subdivision (o), authorized an award of reasonable expenses, including attorney fees, incurred to prove the genuineness of a document or truth of a matter that a party's opponent failed to admit when requested to do so.

16

their appeal until the conclusion of later proceedings; it did not deny it altogether." (*Id.* at p. 653.) Applying these principles, the Court held the order at issue was appealable because it "is a postjudgment order that affects the judgment or relates to its enforcement because it determines the rights and liabilities of the parties arising from the judgment, is not preliminary to later proceedings, and will not become subject to appeal after some future judgment." (*Id.* at p. 656.)

Turning back to the minute order at issue here, defendants contend, and Barriga does not dispute, that the appeal of the order raises issues " 'different from those arising from an appeal from the judgment' " (*Bates*, *supra*, 179 Cal.App.4th at p. 1131) such that it meets the first appealability requirement. And the parties do not dispute that the order also "affects" or "relates to" the judgment by determining the rights and liabilities of the parties arising from the judgment. (*Lakin*, *supra*, 6 Cal.4th at p. 656.) Instead, their dispute centers on whether the order is nonappealable because it is "preliminary to later proceedings." (*Ibid.*) Barriga argues the order is nonappealable because it is preliminary to entry of an order approving payments to late identified class members who do not opt out.

In urging us to reject Barriga's argument, defendants ask us to follow *Bates*. *Bates*, like this case, was a wage and hour class action in which the parties reached a class action settlement that required the employer to make three settlement payments. (*Bates*, *supra*, 179 Cal.App.4th at p. 1128.) After the settlement administrator sent notice to potential class members identified by the employer and received valid claims in response, the trial court approved the settlement agreement "by judgment." (*Id.* at pp. 1128–1129.) Later, after making its first settlement payment, the employer discovered it had omitted over 100 names from the list of potential class

17

members it had delivered to the settlement administrator. (*Id.* at p. 1129.) Following postjudgment briefing and status conferences, the trial court ruled the late-identified class members would receive notice and would be folded into the settlement agreement. Later, the court reconsidered its ruling and issued a minute order vacating it. (*Id.* at p. 1130.)

The defendant appealed the minute order, challenging the vacatur of the earlier order adding the late-identified individuals to the potential settlement class. (*Bates*, *supra*, 179 Cal.App.4th at p. 1130.) As here, the named plaintiffs moved to dismiss the appeal on the ground the minute order was "merely preliminary to later proceedings." (*Id.* at p. 1131.) The Court of Appeal denied the motion. It rejected plaintiffs' characterization of the minute order, although its analysis appeared to focus on the order that was vacated (i.e., the order folding the late-identified individuals into the settlement), rather than the appealed minute order by which the vacatur was accomplished. Specifically, the *Bates* court reasoned, "The court here made an order that the 140 late-identified class members are to be given notice and an opportunity to participate in the settlement and the 529 current participants are to be given notice and an opportunity to opt out . . . . The decision on appeal will have the effect of determining whether the order remains in place or not. The order would be in implementation of the existing judgment and not in contemplation of the entry of a second judgment in a lawsuit that has already been dismissed." (*Id.* at pp. 1131–1132.)

Defendants liken this case to *Bates*, and for good reason: it resolved the same challenge to the appealability of a postjudgment order in a way that favors them, and on remarkably similar procedural facts. However, although we do not go so far as to label *Bates* as wrongly decided, we do not find its analysis persuasive. Although the plaintiffs in *Bates* argued (at least in part)

that the postjudgment order was nonappealable because it was "merely preliminary to later proceedings" (*Bates*, *supra*, 179 Cal.App.4th at p. 1131), the only reason the *Bates* court gave for rejecting this argument was that the order was "in implementation of the existing judgment and not in contemplation of the entry of a second judgment in a lawsuit that has already been dismissed" (*id.* at p. 1132). This analysis is incomplete, however. As this court has explained, the orders that are insufficiently final to be appealable under *Lakin* include postjudgment orders that are "preparatory to a later ruling that will be embodied in an appealable judgment *or order*." (*Finance Holding Co., LLC v. Molina* (2018) 29 Cal.App.5th 663, 679, italics added.) The reasoning of *Bates* thus does not squarely resolve the appealability problem Barriga raises here: whether the minute order is not appealable because it is preliminary to further proceedings that will result in an appealable order.

At the same time, the cases on which Barriga relies (*Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 80 and *Roden v. AmerisourceBergen Corp.* (2005) 130 Cal.App.4th 211, 222) fail to persuade us of the correctness of her position because they are readily distinguishable. (See *Concerned Citizens*, at pp. 76–77, 80–84 [dismissing appeal of minute order vacating judgment and reopening case for further proceedings]; *Roden*, at pp. 217, 222 [dismissing appeal of postjudgment order compelling party successor to respond to discovery relevant to benefits owed under the judgment].)

In the end, the minute order is not readily categorized as either a final adjudication of the parties' rights under the judgment or as preliminary to future proceedings. Although it finally resolved the parties' dispute over the proper interpretation of the settlement agreement, because this is a wage and

19

hour class action, the interpretation of the settlement agreement is just the first of many steps that will be required to bring the case to a close. Thus, even the part of the minute order that interprets the settlement agreement can simultaneously be construed as a final adjudication of the parties' present dispute about their rights under the judgment and as preliminary to further proceedings.

There is an alternative to deciding the difficult appealability question presented here. The California Supreme Court has held that it is appropriate to treat an appeal as a petition for writ of mandate when there is no adequate remedy at law, "the issue of appealability was far from clear in advance," the records and briefs include the elements necessary to a proceeding of writ of mandate, there is no indication the trial court would become more than a nominal party, and dismissing the appeal would be "unnecessarily dilatory and circuitous." (*Olson v. Cory* (1983) 35 Cal.3d 390, 400–401 (*Olson*) [cleaned up]; see *Ofek Rachel, Ltd v. Zion* (2024) 106 Cal.App.5th 1119, 1123, fn. 3 [citing *Olson*; electing to "sidestep [the] threshold issue of appealability" of the attorney fees portion of a postjudgment contempt order by construing the appeal as a petition for writ of mandate]; see also *Shrewsbury Management, Inc. v. Superior Court* (2019) 32 Cal.App.5th 1213, 1221–1222 (*Shrewsbury*) [citing *Olson*; treating appeal of postjudgment discovery order as a petition for writ of mandate].) These requirements are met here.

The appealability of the minute order "was far from clear in advance." (*Olson*, *supra*, 35 Cal.3d at p. 401.) *Bates*, the sole case on point, does not squarely address the appealability problem raised here. The records and briefs "include in substance the elements necessary to a proceeding for writ of mandate." (See *Olson*, at p. 401 [provisions for ensuring accuracy of appellant's appendix are the "functional equivalent of [a] verification"].)

20

Although it is possible defendants may be able to challenge the trial court's enforcement of the settlement agreement in an appeal from a later order approving settlement payments to the excluded settlement class members, to delay a decision until the point when settlement payments are about to be distributed would be "unnecessarily dilatory and circuitous." (*Ibid.* [cleaned up].)

In her motion to dismiss, which was filed on August 1, 2024, Barriga argued that defendants have an adequate remedy of law because they can raise their challenge to the trial court's interpretation of the settlement class definition in an appeal of an order finally approving settlement distributions to the excluded class members. At the January 13, 2025 oral argument in this case, however, Barriga withdrew her opposition to discretionary review. She explained she originally sought dismissal in order to expedite the proceedings, but she is now of the view we have discretion to construe the appeal as a writ and the more appropriate course is for us to do so. We accept Barriga's concessions. Earlier in this case, we could realistically dismiss the appeal, decline discretionary review, and the matter could proceed expeditiously in the trial court. At this juncture, however, no efficiency will be gained by delaying appellate review. Resolving the parties' dispute over the propriety of the minute order now will remove a cloud over the remaining trial court proceedings. Moreover, requiring the parties to wait for appellate review may lead to unnecessary trial court proceedings, which is sufficient to demonstrate the lack of an adequate remedy at law. (*Olson, supra,* 35 Cal.3d at pp. 400–401; see *American Honda Motor Co., Inc. v. Superior Court* (2011) 199 Cal.App.4th 1367, 1371 [writ review appropriate where class certification was based on an incorrect statement of law and delaying review until final judgment would relieve real party in interest of the need to prove an

21

essential element of a class claim]; *Shrewsbury*, *supra*, 32 Cal.App.5th at pp. 1221–1222 [writ review appropriate where it would serve the interest of judicial economy "to provide guidance to the parties . . . at this stage of the proceedings"].)

Accordingly, we will exercise our discretion to treat defendants' appeal as a petition for writ of mandate, and we will deny Barriga's motion to dismiss. But as we explain next, we conclude defendants are not entitled to relief and so we deny the petition.

## II.

### *Defendants Fail to Show the Trial Court Erred by Excluding Their Parol Evidence*

Defendants contend the trial court erred by excluding their extrinsic evidence, because the evidence exposed two latent ambiguities in the settlement agreement: whether the term "Settlement Class" was intended to encompass no more than 130 employees who collectively worked an estimated 23,348 total workweeks, and whether the term "non-exempt" was intended to include defendants' union employees, who are assertedly exempt from overtime.

Defendants' arguments invoke settled principles governing the interpretation of contracts. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165–1166 [the interpretation of a settlement agreement is governed by the same rules that apply to other contracts]; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810–811 ["A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts."].) "The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract. That intent is interpreted according to

22

objective, rather than subjective, criteria." (*Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 916 (*Gilkyson*) [cleaned up] .)

"The court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous." (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432 (*Brown*) [cleaned up].) "The analysis of whether an ambiguity exists is not limited to the words of the contract. Trial courts are required to receive provisionally any proffered parol evidence that is relevant to show whether the contractual language is reasonably susceptible to a particular meaning. Such parol evidence might expose a latent ambiguity when the contract appears unambiguous on its face." (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 620, fn. omitted [cleaned up].)

"The interpretation of a contract involves a two-step process: First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine ambiguity, i.e., whether the language is reasonably susceptible to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." (*Brown*, *supra*, 34 Cal.App.5th at pp. 432–433 [cleaned up].)

"The threshold issue of whether to admit the extrinsic evidence—that is, whether the contract is reasonably susceptible to the interpretation urged—is a question of law subject to de novo review." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 (*Founding Members*).) The ultimate construction

23

placed on the contract may call for different standards of review. (*Ibid.*) Where, as here, "the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract." (*Ibid.*)

A.     *Defendants Fail to Show the Term "Settlement Class" Is Ambiguous*

Turning to defendants' specific arguments, we conclude they fail to show the settlement agreement contains a latent ambiguity. Their first claim that there is such an ambiguity is based on an ostensible inconsistency within the settlement agreement. Defendants contend that although the settlement agreement defines settlement class to mean "[a]ll current and former non-exempt employees," this language is a general term that is qualified by the provisions stating "[d]efendants represent there are approximately 130 Settlement Class members" and "[d]efendants represent that Settlement Class members collectively worked an estimated 23,348 total workweeks during the Class Period." They assert that their extrinsic evidence shows the parties intended for the settlement class to be limited to these "approximately 130 Settlement Class members" who worked "23,348 total workweeks."

We are not persuaded. Defendants' interpretation of the settlement agreement relies on the rule that "[p]articular expressions qualify those which are general" (Civ. Code, § 3534; see also Code Civ. Proc., § 1859), and "when general and specific provisions of a contract deal with the same subject-matter, the specific provisions, if inconsistent with the general provisions, are of controlling force" (*Scudder v. Perce* (1911) 159 Cal. 429, 433). But this rule "applies only when the provisions in question are truly inconsistent." (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 504. If the general and specific terms have independent

24

purposes, then the rule does not apply.  (*Wood v. County of San Joaquin* (2003) 111 Cal.App.4th 960, 969.)

There is no inconsistency here because the provisions have independent purposes.  The definition of "Settlement Class" has one purpose:  it sets forth a mutual, qualitative description of the characteristics of the employees on whose behalf the settlement agreement was entered and whose claims would be considered released once the settlement agreement was fully performed.  The provisions stating the settlement class had "approximately" 130 members who worked "an estimated 23,348 total workweeks" have a different purpose:  they set forth defendants' estimates of the size of the settlement class.  It is evident from their plain language that these provisions are mere estimates.  (Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."].)  The numbers in each provision are preceded by the qualifying words "approximately" and "estimated," which make it unreasonable to interpret the provisions as placing precise or fixed limits on the composition of the settlement class.  (See *Jones v. Pollock* (1950) 34 Cal.2d 863, 866 [the presence of the word " 'estimated' " in a contract providing that work would be done " 'within the *estimated* cost of $13,100' " in combination with a term stating the cost " 'shall be understood as an estimate only by the contractor,' " "make entirely unreasonable a construction of the [contract] as fixing a ceiling price of $13,100" (italics added)].)  This construction—that the estimated number of workweeks was not intended to place fixed limits on the settlement class—is further confirmed by the escalator clause.  That clause increases the gross settlement amount proportionate with the amount by which "actual" workweeks exceed "estimated" workweeks.

Further, both provisions start with the words "[d]efendants represent," clearly conveying the numbers were supplied solely by defendants such that they were unilateral rather than mutual. Interpreting the numbers as placing limits on the scope of the settlement class would also run afoul of the rule that contracts must be interpreted to reflect the mutual intention of the parties. (*Gilkyson*, *supra*, 66 Cal.App.5th at p. 916.)

Defendants' proposed interpretation of the settlement agreement is also unworkable because it would render the escalator clause meaningless. "[A] key rule of contract interpretation is that, to the extent practicable, the contract should be read so as to give effect to all provisions and avoid rendering some meaningless." (*SVAP III Poway Crossings, LLC v. Fitness Internat., LLC* (2023) 87 Cal.App.5th 882, 891.) The settlement agreement provides that the escalator clause will be invoked, and the gross settlement amount increased, "[i]f the *actual number* of workweeks worked by Settlement Class members during the Class Period *is more than 5% greater than 23,348*." (Italics added.) If we were to adopt defendants' view that the terms "approximately 130 class members" and "23,348 workweeks" place fixed limits on the settlement class, then the escalator clause would never take effect.

We are also not persuaded by defendants' claim that the escalator clause was intended to allow for an increase in the number of workweeks but not the number of settlement class members. The parties could have drafted the escalator clause to limit the conditions that would trigger it. They did not. And so we infer the parties intended for the clause to operate as written, to require an increase in the gross settlement amount "[i]f the actual number of workweeks worked by Settlement Class members during the Class Period is more than 5% greater than 23,348." This circumstance can be achieved

26

through an increase in the number of settlement class members, the number of workweeks accrued by each individual settlement class member, or both.

Next, defendants contend their extrinsic evidence exposed a latent ambiguity as to whether the settlement class was intended to be limited to non-exempt employees in direct labor roles. Defendants rely on the following extrinsic matters: (1) before mediation, they produced a class list that "excluded the union, [in]direct labor, and SGA employees"; (2) their attorneys at Jackson Lewis sent Barriga's counsel a mediation brief that "excluded the union, [in]direct labor, and SGA employees"; (3) the mediator's proposal stated the parties negotiated " 'over a period covering 27,658 workweeks (Defendant's calculations),' " which defendants claim "excluded the union, [in]direct labor, and SGA employees"; (4) defendants " 'produced timekeeping and payroll records for about 25% of putative class members,' " and these records ostensibly "excluded the union, [in]direct labor, and SGA employees"; and (5) "[t]he union, [in]direct labor, and SGA employees did not participate in the settlement" by receiving settlement checks.

Defendants fail to show any of these items of asserted extrinsic evidence are relevant under an objective theory of contracts. "California recognizes the objective theory of contracts under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." (*Founding Members*, *supra*, 109 Cal.App.4th at p. 956 [cleaned up].) "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." (*Ibid.*) That is the case here. Defendants' evidence is irrelevant under an objective theory of contracts because it fails to show anything more than their undisclosed intent to limit the settlement class to direct labor employees.

27

Starting with the class list produced by defendants in response to Barriga's discovery requests, although it included only 187 employees, neither the list nor the email transmitting it to Barriga's counsel revealed that this number only accounted for the subset of defendants' non-exempt employees who worked in direct labor roles, or that defendants had several categories of employees and they were interpreting the putative class to encompass only one of them. In essence, although Barriga had asked defendants for a class list of "all non-exempt employees," defendants responded by producing a list of *some* non-exempt employees, without disclosing that it was a partial list. The class list is therefore irrelevant because, at most, it reveals only defendants' undisclosed understanding that the settlement class was limited to direct laborers. (*Founding Members*, *supra*, 109 Cal.App.4th at p. 956.)

The mediation brief is similarly irrelevant. It failed to state that the information provided, which appeared to describe defendants' non-exempt employees generally, in fact only described their non-exempt direct labor employees specifically, and not their non-exempt indirect labor, SGA, or union employees. For example, the mediation brief stated "[t]he alleged putative class includes 187 *current and former Ducommun non-exempt employees*." (Italics added.) This was misleading. Defense counsel did not disclose that this number—187—only accounted for defendants' non-exempt *direct labor* employees, not all of their non-exempt employees. At no point did the mediation brief reveal that defendants had additional non-exempt employees in indirect labor and SGA roles, or that they had a fourth facility with additional employees in Monrovia.[7] In short, the brief shows that

---

[7] Not only did the mediation brief fail to disclose the existence of a fourth facility, Tilley-Coulson's July 2021 email stated defendants had just "three

28

defendants had adopted a limited understanding of the putative class, not that they disclosed their understanding to Barriga or her counsel. As a result, it, too, is irrelevant. (*Founding Members*, *supra*, 109 Cal.App.4th at p. 956.)

The same is true of the mediator's email proposal stating the parties had negotiated "over a period covering 27,658 workweeks ([*d*]*efendant's calculations*)." (Italics added.) This statement shows only that *defendants* calculated the number of workweeks to be 27,658, not how defendants arrived at that number or that it reflected only the workweeks of direct labor employees. Again, at most it demonstrates defendants' unilateral intent to limit the settlement class. (*Founding Members*, *supra*, 109 Cal.App.4th at p. 956.) Equally irrelevant is the fourth circumstance cited by defendants— that they purportedly produced timekeeping records that "excluded the union, [in]direct labor, and SGA employees." Although defendants assert that they withheld records pertaining to the excluded employees, they fail to show they disclosed the withholding to Barriga or her counsel. As for defendants' last item of asserted parol evidence, it is undisputed the reason their non-exempt union, indirect labor, and SGA employees did not receive notice or settlement checks is because they were omitted from the settlement class list that defendants prepared and provided to the settlement administrator. We fail to see how this circumstance represents evidence of a mutual, as opposed to a unilateral and undisclosed, intent to limit the settlement class.

_____

locations." Defendants fail to consider this email. They offer no explanation why it does not serve as substantial evidence Barriga was unaware of and did not agree to carve out of the settlement the non-exempt employees at this fourth facility.

29

Defendants disagree that their parol evidence is irrelevant. They argue the class list, mediation brief, timekeeping and payroll records, and mediator's proposal were provided to Barriga, such that these items were not "undisclosed." (See *Founding Members*, *supra*, 109 Cal.App.4th at p. 960 [explaining that proffered extrinsic evidence was irrelevant under the objective theory of contracts where it merely reflected several individuals' "undisclosed statements regarding intent or understanding"].) This misses the point. Although the items may have been transmitted to Barriga, what they communicated was deficient. They failed to disclose that the information they contained was limited and did not account for all of defendants' non-exempt employees. It is what they failed to say that prevents them from serving as evidence of a mutual intent to limit the class to direct labor employees.

In sum, the settlement agreement is not reasonably susceptible to defendants' interpretation that the settlement class is limited to "130 Settlement Class members who collectively worked 23,348 total workweeks." Further, defendants' extrinsic evidence establishes nothing more than that they harbored the undisclosed intent for the settlement class to encompass their non-exempt direct labor employees and not their non-exempt indirect labor, SGA, or union employees. Consequently, it is irrelevant to establish the settlement agreement contains a latent ambiguity as to whether the settlement class was mutually intended to be limited non-exempt employees, and the trial court did not err by excluding it.

B.   *Defendants Fail to Show the Term "Non-Exempt" Is Ambiguous as Applied to Their Union Employees*

Defendants alternatively claim the term "non-exempt" in the settlement class definition is ambiguous as to whether it includes their union employees. Defendants base this claim on the notion that their union

employees were exempt from overtime requirements under Labor Code section 514 and Wage Order 1-2001. We reject the claim because defendants fail to show their union employees fall within these exemptions.

Both provisions are identical in that they exempt from overtime requirements "an employee covered by a *valid* collective bargaining agreement *if* the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and *if* the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." (§ 514, italics added; Wage Order No. 1-2001, § 3(H).) Thus, it is not the case that every employee covered by a collective bargaining agreement is exempt from overtime. The agreement must also be valid and must have the provisions specified by the exemptions.

Here, defendants' evidence established only that their Monrovia facility was governed by a collective bargaining agreement. Defendants did not provide a copy of the collective bargaining agreement or otherwise attempt to demonstrate that it was valid. They simply offered no evidence the agreement met any of the criteria required to make an employee exempt from overtime. Because defendants failed to show their union employees are exempt from overtime requirements, the settlement agreement term "non-exempt" is not ambiguous as to whether it includes them.

Additionally, for the reasons we have already discussed, defendants' extrinsic evidence does not demonstrate a mutual intent to exclude any category of their employees from the settlement, including union employees. As a result, it does not expose a latent ambiguity in whether the settlement agreement was mutually intended to exclude defendants' union employees. (*Founding Members*, *supra*, 109 Cal.App.4th at p. 956.)

31

## III.

*Defendants Fail to Establish That the Trial Court Erred by Granting*

*Barriga's Motion to Enforce*

Finally, defendants contend the trial court erred by granting Barriga's motion to enforce because Barriga purportedly "failed to establish the trial court had sufficient information to approve the settlement" for the employees who were omitted from defendants' settlement class list and "failed to establish her claims are typical of" the excluded settlement class members who are union employees.[8] (Boldface omitted.) They specifically claim the evidence underlying Barriga's motion for preliminary settlement approval was deficient and did not address the omitted settlement class members or show that her claims were typical of the excluded union employees. Barriga responds that these arguments are procedurally flawed because her motion to

---

[8] Defendants assert throughout their appellate briefs that the number of omitted employees is 283. However, at no point do they cite record evidence demonstrating that this is the true number of omitted employees. " 'Any statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record.*' " (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970.) On our own search of the record, we found no evidence supporting defendants' claim that the total number of indirect labor, SGA, and union employees who were left off the class list produced to the settlement administrator was 283. Instead, this number appears to have been offered up for the first and only time by defense counsel during the September 2023 hearing on Barriga's motion to enforce. The statements of counsel are not evidence. (*In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 592.) We will disregard defendants' unsourced and unsubstantiated claims about the number of additional employees who were omitted from the class list and will be added to the settlement by virtue of the trial court's ruling granting the motion to enforce. (*Professional Collection Consultants*, at p. 970.)

32

enforce was not an opportunity for defendants to collaterally attack the judgment. We agree with Barriga.

Barriga's motion for preliminary settlement approval was filed before entry of judgment. It was accompanied by supporting evidence. This included the declaration of her counsel averring the parties had engaged in "extensive informal discovery," to which defendants produced information that included timekeeping and payroll records "for about 25% of putative class members" and "a class list [with] each putative class member's hire date and termination date." Her counsel stated this information had "allowed the parties to assess the merits and value of Plaintiff's claims and [defendants'] defenses, as well as the chances for class certification." Barriga submitted virtually identical evidence in support of her motion for final settlement approval. The trial court granted preliminary settlement approval, final settlement approval, and class certification based on a settlement class comprised of "All current and former non-exempt employees who worked for Defendant Ducommun Aerostructures, Inc. in California at any time [during the Class Period] and who did not sign an individual settlement and release." These rulings became final upon entry of judgment.

Defendants do not claim the evidence submitted in support of Barriga's motion to enforce was facially inadequate. Instead, their claim is that their opposition to Barriga's motion revealed in hindsight that there was such a deficiency, because although Barriga had sought information about "[a]ll" of defendants' non-exempt employees, defendants had responded by producing data only for their non-exempt direct labor employees. This, in turn, meant Barriga's evidence in support of preliminary approval was assertedly deficient because it only addressed defendants' direct labor employees, and not their indirect labor, SGA, or union employees. In defendants' view, their

33

opposition to Barriga's motion thus exposed a shortfall in the evidence the trial court received and considered when it granted preliminary settlement approval and certified a settlement class consisting of "[a]ll" of defendants' current and former non-exempt employees. (See *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 128 [factors the trial court should consider in evaluating the reasonableness of a class action settlement include " 'the extent of discovery completed' "]; *id.* at p. 133 [trial court must "receive and consider enough information about the nature and magnitude of the claims being settled . . . to make an independent assessment of the reasonableness of the terms to which the parties have agreed"].) Defendants appear to believe that Barriga was required to overcome the shortfall as part of her motion to enforce the settlement.

Defendants fail to cite any authority for the unusual proposition that a settling party can avoid being compelled to comply with a class action settlement agreement, particularly one that has been reduced to judgment, by collaterally attacking the evidence supporting settlement approval as deficient *because they unilaterally limited it*. Defendants are represented by competent counsel who could discern the difference between the settlement class as defined in the settlement agreement and as they had interpreted it when they served their informal discovery responses. To the extent there was a deficiency in the evidence supporting preliminary settlement approval, it was incumbent upon defendants to inform the trial court. They did not, and the court granted preliminary approval and final approval and entered judgment.

As Barriga correctly observes, this procedural posture has important consequences. "Before entry, the judge may freely alter the judgment rendered." (7 Witkin, Cal. Proc. (6th ed. 2021) Judgment, § 65, p. 459.)

34

"Once judgment has been entered . . . the court may not reconsider it and loses its *unrestricted* power to change the judgment.  It may correct judicial error only through certain limited procedures such as motions for new trial and motions to vacate the judgment." (*Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1606; see *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 [after entry of judgment, the trial court "cannot . . . change an order which has become final even though made in error"]; *Ramon v. Aerospace Corp.* (1996) 50 Cal.App.4th 1233, 1237 ["[a] final judgment terminates the litigation between the parties and leaves nothing in the nature of judicial action to be done other than questions of enforcement or compliance"]; *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1237 [" '[t]he general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment' "].)

A motion to enforce a settlement agreement is not one of these limited procedures.  "The power of the trial court under Code of Civil Procedure section 664.6 . . . is extremely limited." (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176.)  "The court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement. . . .  The court simply has reserved the power to enforce, according to its terms, the contract they negotiated amongst themselves." (*Ibid.*)  When Barriga brought her motion to enforce, the trial court had already approved the settlement and entered judgment in conformity with the settlement agreement.  Its judgment expressly certified the settlement class consisting of "[a]ll current and former non-exempt employees who worked for Defendant Ducommun Aerostructures, Inc. in California at any time from December 16, 2016 through August 29, 2021 ('Class Period') and who did not sign an individual settlement and release."

The only questions presented by Barriga's motion were the proper interpretation of the settlement agreement and whether defendants had complied with its terms.  The motion was not an opportunity for the court to rewrite the settlement agreement; restrict the settlement class to match the mediation discovery responses that defendants belatedly revealed had addressed only their non-exempt direct labor employees; or consider anew whether Barriga was an adequate representative of all employees who fell within the settlement class definition.  As the court was without authority to consider these issues, Barriga's asserted failure to sufficiently address them in her motion was not a basis for denying enforcement.[9]

## DISPOSITION

The motion to dismiss the appeal is denied.  The petition for a writ of mandate is denied.  Barriga is entitled to her costs in this proceeding.  (Cal. Rules of Court, rule 8.278(a)(1).)

DO, J.

WE CONCUR:

DATO, Acting P. J.

CASTILLO, J.

---

[9]    Because we agree with Barriga that defendants' challenges are procedurally flawed, we need not and do not address the merits of their challenges.